TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DENNIS MITCHELL (Cal. Bar No. 116039)
Assistant United States Attorney
Deputy Chief, Environmental and Community Safety Crimes Section
HEATHER C. GORMAN (Cal. Bar No. 258920)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2484/0334
     Facsimile: (213) 894-3713
     E-mail:    dennis.mitchel@usdoj.gov
                heather.gorman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-125(A)-JFW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFEDNANT SUSAN TICKNER |
| v. | Hearing Date: May 23, 2022 |
| SUSAN TICKNER, | Hearing Time: 8:00 a.m. |
| Defendant. | Location: Courtroom of the Hon. John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Dennis Mitchell and Heather C. Gorman, hereby files its sentencing position for defendant Susan Tickner ("defendant").

//

//

//

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and any other evidence or argument that the Court may wish to consider at the time of sentencing.

Dated: May 16, 2022         Respectfully submitted,

                            TRACY L. WILKISON
                            United States Attorney

                            SCOTT M. GARRINGER
                            Assistant United States Attorney
                            Chief, Criminal Division


                                  /s/
                            ─────────────────────────────
                            DENNIS MITCHELL
                            HEATHER C. GORMAN
                            Assistant United States Attorneys

                            Attorneys for Plaintiff
                            UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On November 22, 2021, defendant Susan Tickner ("defendant") pleaded guilty pursuant to a plea agreement filed on November 21, 2021, (the "Plea Agreement") to a single-count First Superseding Information (the "information") in United States v. Susan Tickner, CR No. 20-125(A)-JFW.  The information charged defendant with introducing an unapproved new drug, namely naltrexone pellets, into interstate commerce, in violation of the Food, Drug, and Cosmetic Act ("FDCA"), namely, Title 21, United States Code, Sections 331(d), 355(a), and 333(a)(1).

During the change of plea hearing, defendant waived her right to a presentence investigation and report by the United States Probation and Pretrial Services Office ("USPO").  See Stipulation for Findings Under Fed. R. Crim. P. 32(c)(1)(A)(ii) re Defendant Susan Tickner's Sentencing, Docket no. 138, ¶¶ 4-5.  On December 6, 2021, the Court found that the information in the record of the case was sufficient to enable the Court to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553 without a presentence investigation or report has been completed by the USPO.

For the reasons set forth below and consistent with the Plea Agreement, the government recommends that the Court sentence defendant to a two-year term of probation.

**II.  STATEMENT OF FACTS**

For many years, continuing to at least February 2018, defendant worked as an assistant to Dr. Lance Gooberman ("Gooberman") at Gooberman's medical practice in New Jersey.  (Plea Agreement ¶ 9.) While working at Gooberman's medical practice, defendant made and

oversaw the making of drugs developed by Gooberman to treat opioid addiction referred to as naltrexone pellets and liquid naltrexone (collectively and separately, "the naltrexone products" or "the Gooberman naltrexone products") (Id.) No new drug application was ever submitted to the U.S. Food and Drug Administration ("FDA") for either the naltrexone pellets or the liquid naltrexone; accordingly, at all times, both naltrexone products constituted an unapproved new drug under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331, et seq. ("FDCA"). (See id.) Since the naltrexone products were not FDA-approved, the FDCA generally prohibited the distribution of the drugs in interstate or foreign commerce.

Because the naltrexone products could not be distributed to anyone outside of Gooberman's medical practice, inquiries for the Gooberman naltrexone products were referred to, among others, Wayne Moran ("Moran"), a physician located in Hong Kong. Neither Gooberman nor defendant, however, shipped naltrexone products directly to Moran in Hong Kong. Instead, defendant would deliver the naltrexone products to Moran in one of several other ways, including: (1) providing the naltrexone products to Moran in person when he would come to Gooberman's medical practice; (2) shipping the naltrexone products to a hotel or other place in the United States where Moran was visiting; and (3) shipping the naltrexone products to third parties located in Pennsylvania, Minnesota, or California, who would then ship the naltrexone products to Moran in Hong Kong. (Id.) Moran would subsequently sell and ship the naltrexone products from Hong Kong to customers around the world, including customers located in the United States. (Id.)

After naltrexone products had been delivered to Moran, defendant would request payment from Moran for the Gooberman naltrexone products and other products. (Id.) To do this, defendant would email Moran a running inventory that detailed the quantities and types of naltrexone products, as well as the wholesale cost of those products, that defendant and Moran had provided to Moran. (Id.) When necessary, defendant would also send Moran reminder emails to pay. Once Moran authorized a specified amount to be paid, defendant would run Moran's credit card for the authorized amount on behalf of Pellet Technologies, LLC.

One of the third parties who received and shipped naltrexone products on behalf of Moran was J.S. On or about May 7, 2017, a representative of Moran emailed defendant and Gooberman, requesting that naltrexone products be shipped to Moran at an address in Palm Desert, California (the "Palm Desert location"). In subsequent correspondence, Moran's representative indicated that J.S. was located at the Palm Desert location and that J.S. had previously sent naltrexone products to Moran. (Id.) On or about May 9, 2017, defendant shipped 200 units of liquid naltrexone intended for Moran from New Jersey to the Palm Desert location. (Exhibit A, email exchange between defendant and Freya Saxon, dated May 25, 2017, re: Order check, with attachment ("Ex. A") at 5.) In addition, on or about May 17, 2017,[1] defendant shipped 300 naltrexone pellets intended for Moran from New Jersey to the Palm Desert location. (Id.; Plea Agreement ¶ 9.)

---

[1] The Plea Agreement reflects a date of May 17, 2021, which is an error. The government believes that during the change of plea hearing, the parties noted and agreed that the correct date should be May 17, 2017.

3

Once the naltrexone products had been received in Hong Kong, Moran's representative emailed defendant asking what defendant had shipped to J.S. (Ex. A at 1.) On or about May 25, 2017, defendant sent an email, addressed to Moran's representative, to Moran's email address. (Id.; Plea Agreement ¶ 9.) Defendant attached to the email an updated copy of the running inventory and indicated in her email that the last three products listed on the last page of the attachment reflected the naltrexone products that defendant sent to J.S. at the Palm Desert location. (Id.) The products included 200 units of liquid naltrexone, 150 naltrexone pellets of two-month duration, and 150 naltrexone pellets of three-month duration. (Ex. A at 5.)

In June 2017, defendant followed up with Moran to request payment for the naltrexone products previously shipped. (See Exhibit B, email exchange among defendant, Moran, and Freya Saxon, dated June 6 through June 8, 2017 ("Ex. B") at 2.) On June 6, 2017, defendant emailed Moran and asked if he or the person acting on his behalf got the updated running inventory and if Moran could send payment. (Id.; Plea Agreement ¶ 9.) Both Moran's representative and Moran indicated that they would address defendant's request. (Ex. B at 1-2.) On June 24, 2017, with Moran's authorization, defendant charged defendant's credit card in the amount of $12,795 on behalf of Pellet Technologies, LLC, as payment for the naltrexone products and other things provided by defendant and Gooberman. (Plea Agreement ¶ 9.)

Between May 2008 and February 2018, Gooberman and defendant provided over 16,500 naltrexone pellets and over 3,000 units of liquid naltrexone to Moran or individuals acting on Moran's behalf. (Id.) Over the same period, Moran paid over $1,000,000 to Pellet

4

Technologies, LLC, for the naltrexone products and other items provided by defendant and Gooberman. (Id.)

### III. THE PLEA AGREEMENT

In the Plea Agreement, the parties agreed to a total offense level of four, based on a base offense level of six (U.S.S.G. § 2N2.1(a)) and a two-level reduction for acceptance of responsibility (U.S.S.G. § 3E1.1(a)). (Plea Agreement ¶ 11.) The parties further agreed not to seek or argue that other specific offense characteristics, adjustments, or departures be imposed. (Id.)

### IV. THE GOVERNMENT'S RECOMMENDATION

For the reasons set forth below, and consistent with the government's obligations under the Plea Agreement, the government respectfully recommends that the Court impose the following sentence: (a) two-year term of probation; and (b) a special assessment of $25.

**A. Analysis Under the Sentencing Guidelines**

As noted above, in the Plea Agreement, the parties stipulated to a total offense level of four for defendant. With a presumed criminal history category of I, this results in a Guidelines range of zero to six months. For the reasons discussed below, the government believes that the government's recommended term of probation is reasonable and appropriate.

**B. Analysis Under 18 U.S.C. § 3553(a)**

The sentence recommended by the government is reasonable within the meaning of Title 18, United States Code, Section 3553(a). United States v. Booker requires the Court to consider the factors identified in Section 3553(a) when imposing sentence. 543 U.S. 220 (2005). Among the factors to be considered are the nature and circumstances of the offense; the history and characteristics of the

defendant; and the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future criminal conduct, and protect the public from further crimes. 18 U.S.C. § 3553(a).

        1.   <u>The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Provide General Deterrence Warrant a Two-year Term of Probation</u>

Sections 3553(a)(2)(A) and (2)(B) require the Court to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence. The interstate distribution of unapproved new drugs, in violation of the FDCA, constitutes a serious offense. Pursuing FDA-approval of a new drug application is a rigorous process designed to ensure the safety and efficacy of drugs distributed in the marketplace. The process provides some comfort to patients who receive the new drugs, knowing that the drugs have been diligently studied and their results closely examined. Drugs that have not been subject to the required testing and analysis of the new drug application process and that do not meet strict labeling requirements do not have the same safeguards that they can and will be safely and effectively used.

Because of defendant's conduct, numerous individuals received the drugs without the imprimatur of the FDA's new drug application process. Moreover, those individuals may have never known that fact. In addition, because the naltrexone products provided to Moran did not reflect Gooberman's affiliation (on the packaging, labeling, or information sent to the customers), any customers – or patients of customers – with concerns about the naltrexone products would have

6

had no way to address those concerns with the manufacturer (i.e. Gooberman and defendant). Defendant can only speculate that the naltrexone products worked as they were designed to and did not cause harm to patients.

Despite the serious of defendant's offense conduct, defendant's involvement in the offense arose solely from her role as Gooberman's office manager. Defendant's conduct in this matter was under the authority and/or direction of Gooberman, and conducted within the scope of defendant's employment.

In light of the foregoing, the government submits that a two-year term of probation is necessary and sufficient to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for defendant's offense, and to provide general deterrence.

2. <u>The History and Characteristics of Defendant and the Need to Protect the Public from Further Crimes Warrant a Two-year Term of Probation</u>

Section 3553 requires the Court to consider the history and characteristics of the defendant and the need to protect the public from further crimes by defendant in imposing sentence. 18 U.S.C. §§ 3553(a)(1), (2)(C).

The government is not aware of any prior criminal history for defendant. In addition, the government believes that if Gooberman had not instructed defendant to engage in the unlawful distribution of unapproved new drugs, it is doubtful that defendant would have committed the offense conduct. Moreover, prior to the entry of her guilty plea, defendant met with the government and admitted her role in the offense. Considering the facts in this case and the history and characteristics of defendant, the government believes a

probationary sentence is sufficient to protect the public from further crimes by defendant.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant as follows: (a) two-year term of probation; and (b) $25 special assessment.

Dated: May 16, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
DENNIS MITCHELL
HEATHER C. GORMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA